IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:07CR00014 |
| | ) | |
| TELVIS JEVAR DAVIS, | ) | **MEMORANDUM OPINION** |
| | ) | |
| Defendant. | ) | By: Jackson L. Kiser |
| | ) | Senior United States District Judge |

Before me now is Defendant's Motion to Suppress. Oral arguments have been heard and the case is ripe for decision. For the reasons stated herein, Defendant's Motion to Suppress is **DENIED**.

## I. FACTUAL BACKGROUND

On December 13, 2006, Pierre Dixon ("Dixon") appeared at Telvis Jevar Davis' ("Defendant") residence covered in blood and seeking assistance because Dixon believed that he had been shot. Terrence Payne ("Payne), who resided with the Defendant at the time, let Dixon into the home and called 911. Payne informed the dispatcher that the apparent shooting had not occurred at the house, but that Dixon had arrived there seeking help. After calling for help, Payne and the Defendant led Dixon outside to the carport.

Payne's call to 911 was one of three reports of shootings made within several minutes to the Danville police. Sergeant Todd Brown ("Brown") arrived at the scene within a few minutes. He testified that he found Dixon covered in blood lying in a carport next to the home. There was a blood trail leading from the victim to the front door of the house. Dixon did not respond to

questioning but made sounds described as gurgling or coughing. Payne testified that he told Brown that there was no one inside the house, and that Dixon had just appeared at the house in that condition. Sergeant Brown did not recall this conversation.

Other officers soon arrived and joined Officer Brown in entering the house to look for additional victims or assailants. Officers Brown and Keith Thompson ("Thompson") testified that they did not search for contraband while inside the house. Witnesses dispute the amount of time that the officers spent inside, with Payne claiming that the officers stayed inside for up to forty-five minutes before obtaining a warrant. The officers testified that the sweep took only a few minutes and that they waited outside for the warrant.

After checking the house for additional assailants and victims, Officer Thompson left to apply for a search warrant, which was obtained and executed within about ninety minutes. In applying for the warrant, Officer Thompson told the magistrate that they found a man with a gunshot wound outside the house, a blood trail leading into the house, and the search revealed a blood trail throughout the house. Pursuant to the search warrant, the officers found a firearm and two kilograms of cocaine. After the search, the investigating officers found that the Dixon had not been shot but suffered a panic attack when he witnessed the shooting of his friend in close proximity.

## II.   PROCEDURAL HISTORY

The Defendant filed this Motion to Suppress on July 17, 2007. The Government filed a response in opposition on July 25. At a hearing held on July 26, 2007, Payne testified for the defense and Officers Brown and Thompson testified for the Government. As stated on the record during the hearing, I denied the Defendant's Motion to Suppress because I found that the

police officers had sufficient probable cause to obtain a search warrant before they even entered the house based on their discovery of an apparent gunshot victim and the blood trail leading to the home. I requested briefs on the issue of possible exceptions to the warrant requirement. The Defendant filed a brief on July 31 and the Government responded on August 2.

### III. LEGAL STANDARD

The Fourth Amendment protects "The right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures" and states that warrants shall be issued only upon probable cause. U.S. CONST. amend. IV. Probable cause is determined by the totality of the circumstances, seen from the point of view of "those versed in the field of law enforcement." *Illinois v. Gates*, 462 U.S. 213, 230-32 (1983). Probable cause means that there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 238. Warrantless searches of a dwelling place are presumptively unreasonable absent exigent circumstances. *Payton v. New York*, 445 U.S. 573, 586-87 (1980).

### III. DISCUSSION

In response to the Defendant's Motion to Suppress, the Government argued that the police officer's entry of the Defendant's residence without a warrant was justified under three different exceptions to the Fourth Amendment's warrant requirement: the protective sweep exception,[1] exigent circumstances, or the community caretaker doctrine. In addition to the

---

[1] A protective sweep is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). The circuit courts are divided on whether such a sweep is justified only when incident to an arrest. *Compare*, e.g., *United States v. Miller*, 430 F.3d 93, 100 (2d Cir. 2005) ("The restriction of the protective sweep doctrine only to circumstances involving arrests would jeopardize the safety of officers in contravention of the pragmatic concept of reasonableness embodied in the Fourth Amendment."); *with United States v. Torres-Castro*, 470 F.3d 992, 996

3

reasons stated on the record during the July 26 hearing, I find that the warrantless entry in this case is also justified under the emergency doctrine. Given these two justifications, discussion of the other exceptions addressed in the briefs is unnecessary.

The Supreme Court has recognized that the "Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. Similarly, when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises." *Mincey v. Arizona*, 437 U.S. 385, 392 (1978). This exception to the warrant requirement is sometimes called "the emergency doctrine" and falls under the umbrella of exigent circumstances. *United States v. Moss*, 963 F.2d 673, 678 (4th Cir. 1992). The burden overcoming the presumption of unreasonableness in a warrantless entry due to exigent circumstances is on the government. *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984). The emergency doctrine applies where government agents searched under the "objectively reasonable belief that an emergency existed that required immediate entry to render assistance or prevent harm to persons or property within." *Moss*, 963 F.2d at 678. In analyzing the government's actions in these cases, courts should not engage in "'unreasonable second guessing' of the officers' assessment of the circumstances that they faced." *Figg v. Schroeder*, 312 F.3d 625, 639 (4th Cir. 2002). A search under the emergency doctrine is limited by the type of emergency involved and cannot be used to gather evidence or search for things unrelated to the emergency that prompted the entry. *Moss*, 963 F.2d at 678. However, "the police may seize

---

(10th Cir. 2006)("'protective sweeps' are only permitted incident to an arrest."). The Fourth Circuit has not yet addressed this issue.

4

any evidence that is in plain view during the course of their legitimate emergency activities."
*Mincey*, 437 U.S. at 393.

The Fourth Circuit has already applied the emergency doctrine under facts similar to the case before me. *United States v. Roberts*, 166 Fed. Appx. 80, 83 (4th Cir. 2006) (unpublished). In *Roberts*, the court justified the officers' warrantless entry and search of a mobile home because the officers reasonably believed that a wounded person was inside after finding a man with a gunshot wound nearby and a blood trail leading to the door of the mobile home. *Id*. The case before me fits squarely into the exception described in *Roberts* and *Mincey*. When officers arrived at the Defendant's house, all parties believed that a shooting had taken place, including Dixon who was lying in the carport covered in blood and unable to communicate. It was only discovered after the search warrant had been obtained and executed that Dixon had not been shot at all. The officers testified that they believed the shooting had occurred inside the house because they found a blood trail leading from the house to Dixon. They further testified that they entered the house in order to determine if the armed assailant or other victims were still inside the house and not to gather evidence.

The Defendant argued that the officers had no probable cause to believe that an assailant or other victims were in the house because Payne had called the police to his house, explained how the wounded man had shown up and why blood was leading to the house, and told the arriving officers that no one else was inside. The Defendant's suggestion that the responding officers should rely on the statements of a person present at the scene of the crime is grounded on the flawed assumption that crime scene witnesses are rarely mistaken or dishonest. While I have no reason to doubt Payne's veracity, I also cannot second guess the officers' assessment at

5

the scene that Payne may not have known or revealed the whole truth. Indeed, Payne testified that he did not know for sure whether anyone else was in the house because was sleeping on the second floor when Dixon's pleas for help woke him up. This admission demonstrates the potential for error in relying solely on the statements from a witness at a crime scene in determining whether the scene is secure.

The emergency doctrine is similar to, but distinct from, the "community caretaker" doctrine described by the Supreme Court in *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). Both are grounded in the rationale that the Fourth Amendment's warrant requirement yields in certain circumstances to law enforcement's duty to protect persons and property. *Moss*, 963 F.2d at 678 (emergency exception to warrant requirement permits officers to make searches in order "to protect property or persons from immediately threatened harm, or to render assistance to persons in need"); *United States v. Gillespie*, 332 F. Supp. 2d 923, 929 (W.D. Va. 2004) (community caretaker exception to the warrant requirement "allows officers who are . . . protecting the safety of persons or property, to make warrantless searches."). Under the community caretaker exception, as opposed to the emergency exception, officers may make warrantless searches provided that such searches are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id*. The community caretaker exception is most often used to justify searches of automobiles, and in the rare cases where it has been applied to homes, the entry was unrelated to the investigation of a crime. *Gillespie*, 332 F. Supp. 2d at 929.

The Government argued that the entry of the home was a reasonable exercise of their community caretaker function and should be justified because "the ultimate standard set forth in

6

the Fourth Amendment is reasonableness . . . [and] . . . whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case. . ." *Cady*, 413 U.S. at 439. The Government argues that the police had a duty grounded in reasonableness to make sure the area was safe given the facts of this case: a report of three shootings within a few minutes, an apparent shooting victim with a trail of blood leading into the home, and a group of onlookers gathering nearby. Furthermore, the officers testified that they did not search for evidence until after obtaining the search warrant.

Nonetheless, I am reluctant to ground this decision solely on the community caretaker exception because looking for a shooting suspect or his potential victims is a situation in which law enforcement's community caretaker functions coincide with their investigative functions. Because the "detection, investigation, or acquisition of evidence relating to the violation of a criminal statute" is ultimately aimed discouraging crime, in some sense all law enforcement action could be described as a "community caretaker function." The emergency doctrine adequately covers situations such as this one without blurring the line between the officers' investigative role and community caretaker role.

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Suppress is **DENIED.**

The Clerk is directed to send a certified copy of this Memorandum Opinion and the attached Order to all counsel of record.

ENTERED this 9th day of August, 2007.

s/Jackson L. Kiser
Senior United States District Judge

7